# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM ERIC ASHLEY, | ) | CASE NO. 5:20-CV-01444 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff, William Eric Ashley (Plaintiff), challenges the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (Commissioner),[1] denying his application for Disability Insurance Benefits (DIB) under Titles II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 13). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

**I.  Procedural History**

On May 21, 2015, Plaintiff filed his application for DIB, alleging a disability onset date of February 5, 2014.[2] (R. 12, Transcript (Tr.) 216). The application was denied initially and upon

---

[1] Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a party." Fed.R.Civ.P. 25(d).
[2] Plaintiff previously applied for benefits in December 2011, with an onset disability date of September 15, 2011. His claim was denied on February 4, 2014. (Tr. 72, 75). The Appeals Council

reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 106, 119, 141). Plaintiff participated in the hearing on May 23, 2017, was represented by counsel, and testified. (Tr. 32-68). A vocational expert (VE) also participated and testified. (*Id*.) On July 31, 2017, the ALJ found Plaintiff not disabled. (Tr. 15-31). On May 2, 2018, the Appeals Council (AC) denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). Plaintiff appealed the decision to the United States District Court, which remanded the matter in 2018. (Tr. 1044).

Following remand, a hearing was held on July 16, 2019. (Tr. 980-1004). Plaintiff participated in the hearing, was represented by counsel, and testified. (*Id*.) A VE and a medical examiner (ME) also participated and testified. (*Id*.) On August 29, 2019, the ALJ issued a partially favorable decision, concluding that Plaintiff was under a disability from February 5, 2014 to August 31, 2016. (Tr. 951-979). On October 4, 2019, Plaintiff filed exceptions to the ALJ's decision, arguing that there was no support for the end of the closed period of disability. (Tr. 945). On May 6, 2020, the AC concluded that the decision was supported by substantial evidence, was consistent with applicable laws, regulations and Social Security Rulings and sufficiently complied with the court remand. (Tr. 945). Thus, the AC found no reason to assume jurisdiction over the matter. (Tr. 945-950).

Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1).[3] The

---

denied Plaintiff's request for review in April 2015. (Tr. 88-90). Plaintiff did not appeal the decision to the District Court.

[3] Plaintiff's complaint makes clear that he appeals from the ALJ's September 4, 2019 decision. (R. 1). However, throughout his brief, Plaintiff's record citations do not correspond with the records currently before this Court. The court attempts to connect Plaintiff's arguments to the current record where possible, to provide meaningful review without advocating for Plaintiff. Any discrepancies that cannot be explained are noted below.

2

parties have completed briefing in this case. (R. 15, 17, 18).

## II. Evidence

### A. Relevant Medical Evidence[4]

#### 1. Treatment Records

On March 23, 2009, Plaintiff injured his lower back while working as a press operator. (Tr. 938). Plaintiff underwent two surgeries on his lumbar spine, a surgical fusion in 2012 and a repeat surgical fusion incorporating a fusion extending from L4 to S1 in 2015. (Tr. 938).

In September 2016, Plaintiff treated with his neurosurgeon, Dane Donich, M.D. (Tr. 1208-09). On exam, Plaintiff's gait was steady, he was able to ambulate on his heels and toes, and he was able to move his extremities with motor strength of 4+ out of 5 in his legs. (Tr. 1209). Dr. Donich noted that Plaintiff was scheduled for lumber steroid injections with his pain management physician. (Tr. 1218).

In September and October 2016, Plaintiff treated with pain management physician, Marisa Wynne, D.O. (Tr. 1353, 57). Plaintiff reported constant pain in his lower back, made worse by activity. (Tr. 1353, 57). Dr. Wynne noted Plaintiff's gait was slow, but that he had normal motor strength and reflexes. (Tr. 1354, 58). Dr. Wynne further noted tenderness as well as decreased range of motion of the lumbar spine. (Tr. 1354, 58). Treatment included prescriptions for Percocet, MS Contin, and Neurontin. (Tr. 1355, 59). Dr. Wynne noted that a 2016 MRI showed very minimal disc slippage and mild stenosis. (Tr. 1359). Dr. Wynne encouraged Plaintiff to "stay active." (Tr. 1360). Dr. Wynne's treatment notes and findings from November 2016 to through March 2017

---

[4] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

3

were consistent. (Tr. 1361-82).

On March 23, 2017, Plaintiff underwent an epidural steroid injection procedure with Dr. Wynne. (Tr. 1383-84). At his April 2017 pain management appointment, Plaintiff reported that the injection helped for three weeks. (Tr. 1390). Guang Yang, M.D., noted Plaintiff's gait was slow, with normal motor strength bilaterally. (Tr. 1388). Dr. Yang further noted tenderness and decreased range of motion of the lumbar spine. (Tr. 1387-88). The doctor refilled Plaintiff's medications and encouraged him to stay active. (Tr. 1389-90). Plaintiff's pain management treatment notes stayed consistent throughout 2017. (Tr. 1387-1430).

In January 2018, Plaintiff treated with Michael Louwers, M.D., at the pain management office. (Tr. 1431). Dr. Louwers noted Plaintiff's gait and coordination were normal and noted tenderness as well as decreased range of motion of the lumbar spine. (Tr. 1432). Dr. Louwers indicated that Plaintiff was doing well and that the epidural steroid injections provided 50% relief for a couple of weeks at a time. (Tr. 1434). Also, in January 2018, Nurse Practitioner Jessica Herraiz at Plaintiff's neurosurgeon's office noted that Plaintiff's gate was steady, he was able to ambulate on his heels and toes, and he was able to move his extremities with muscle strength of 4+ out of 5 in his legs. (Tr. 1211-12).

In February and March 2018, Dr. Wynne noted Plaintiff's gait and motor strength were normal and noted tenderness as well as decreased range of motion of the lumbar spine. (Tr. 1437, 42). In April 2018, Plaintiff treated with Nurse Practitioner Wanchana Sachal at his primary care office and reported that he felt "okay overall." (Tr. 1219). He reported consistent back pain of seven out of ten, which was exacerbated when he stayed in one position for too long. (Tr. 1219). On examination, he had a steady gait and no back pain with a limited range of motion. (Tr. 1222). Also, in April 2018, Plaintiff reported to Dr. Wynne that the epidural steroid injection provided

4

50-79% relief for up to four weeks. (Tr. 1449).

In May 2018, Plaintiff treated with Nurse Practitioner Kathleen Scott at his primary care office. (Tr. 1225). Plaintiff reported doing well overall and his examination was within normal limits. (Tr. 1225-27). Also, in May 2018, Physician Assistant Angela Kogut, PA-C, noted normal gait and coordination with pain and reduced range of motion. (Tr. 1454). Plaintiff also treated with Dr. Louwers, who administered another epidural steroid injection. (Tr. 1457).

Plaintiff's June through December 2018 pain management treatment records note his gait was antalgic with normal coordination and tenderness and a decreased range of motion in his lumbar spine. (Tr. 1461, 1466, 1473, 1477, 1483, 1483, 1492-93). In October 2018, Plaintiff reported "great pain relief" for two to three weeks from his recent injection. (Tr. 1484).

In October 2018, Plaintiff consulted with chiropractor Amy J. Curtis, D.C., for evaluation and treatment of his low back. (Tr. 1317). The chiropractor recommended a treatment two times a week for eight weeks. (Tr. 1319). Plaintiff underwent chiropractic care from February to May 2019. (Tr. 1320-51).

In January 2019, Plaintiff treated with Dr. Yang, who noted an antalgic gait with normal coordination, and tenderness in the lumbar spine with decreased range of motion. (Tr. 1497-98). Dr. Yang suspected that Plaintiff's surgical hardware had loosed and encouraged him to follow up with his neurosurgeon. (Tr. 1500). He further encouraged Plaintiff to continue physical exercise and stretching. (Tr. 1500). From February to June 2019, Plaintiff's pain management records noted an antalgic gait with normal coordination, and tenderness in the lumbar spine with decreased range of motion. (1508-25).

In March 2019, an updated MRI confirmed no compressive pathology, no evidence of hardware failure, no canal stenosis, no more than mild foraminal stenosis or more than mild

5

degenerative changes apart from the surgical sites. (Tr. 1267).

### 2. Medical Opinions Concerning Plaintiff's Functional Limitations

On August 9, 2015, state agency medical consultant David Knierim, M.D., reviewed the records and indicated that Plaintiff could perform sedentary work, could occasionally stoop, kneel, crouch, crawl, climb ramps and stairs, but never climb ladders, ropes or scaffolds, and should avoid all exposure to workplace hazards. (Tr. 102). On November 10, 2015, state agency medical consultant Abraham Mikalov, M.D., generally concurred with Dr. Knierim's opinion with the additional restriction of no more than frequent pushing and pulling with the lower extremities. (Tr. 116).

On March 30, 2017, Gordon Zellers, M.D., a state medical examiner, examined Plaintiff on behalf of the Ohio Bureau of Workers' Compensation. (Tr. 938-944). His opinion is set forth more fully in the analysis below.

### B. Relevant Hearing Testimony

At the May 23, 2017 hearing, Plaintiff testified as follows:

- He treated his back issues with pain management, a TENS unit, and tailbone injections. (Tr. 46). He took morphine and Percocet. (Tr. 47).

- After he healed from back surgery, he could take care of himself, but at a slower pace. (Tr. 49). He could make simple meals and do housework. (Tr. 49-50). His back issues got worse after the surgery, which did not relieve his pain. (Tr. 52).

At the July 16, 2019 hearing, Plaintiff testified as follows:

- Due to his back and leg pain, he cannot stand or sit for long and sometimes needs to lie down. (Tr. 987). The pain is increasing. (Tr. 988). He receives pain injections. (Tr. 988). He sits in a recliner during the day because it is the best position to manage his pain. (Tr. 990-91).

- His daughter cooks and cleans. (Tr. 993). He does not lift anything heavier than a gallon of milk. (Tr. 994).

Also at the July 16, 2019 hearing, the ALJ heard testimony from Arthur Lorber, M.D., an independent ME. (Tr. 994-999). Dr. Lorber reviewed Plaintiff's medical records and heard Plaintiff's hearing testimony. (Tr. 995). Dr. Lorber testified that Plaintiff's back impairment equaled Listing 1.04A from February 5, 2014 to August 13, 2016. (Tr. 997). Thereafter, Dr. Lorber opined, Plaintiff could perform the following: occasionally lift ten pounds and frequently lift less than ten pounds; stand for two hours a day, not more than 30 minutes at a time; may sit for a total of six hours, not more than one hour at a time; does not need to break when changing positions; must avoid exposure to concentrated vibration; cannot work around unprotected heights or around dangerous moving machinery; may occasionally climb stairs and/or ramps; may occasionally operate foot pedals with either foot; may occasionally stoop and crouch; should not kneel or crawl. (Tr. 996-97).

The ALJ posed the following hypothetical question to the VE:

> And if you can assume a hypothetical individual the claimant's age, and education, with the past jobs you described. And further assume this individual would be limited to sedentary work, with the additional limitations of only occasionally stooping, crouching, kneeling, crawling, and only occasionally climbing ramps and stairs. Never climbing ladders, ropes, or scaffolds. Must avoid all hazards. Would be limited to simple, routine tasks that do not involve arbitration, negotiation, or confrontation. Cannot direct the work of others or be responsible for the safety or welfare of others. Cannot perform work requiring strict production quotas. And cannot perform piece rate work or assembly line work. And would be limited to only occasional interaction with others.

(Tr. 1001).

The VE testified that such an individual could not perform Plaintiff's past work, but could perform work as a ticket checker (DOT 219.587-010, sedentary, unskilled, SVP of a 2, 1.2 million jobs nationally), a document preparer (DOT 249.587-018, sedentary, unskilled, SVP of a 2, 2.2 million jobs nationally), and a weight tester (DOT 539.485 010, sedentary, unskilled, SVP of a 2,

7

450,000 jobs nationally). (Tr. 1001).

The ALJ posed a second hypothetical question to the VE:

> [A]ssume a hypothetical individual the claimant's age and education, with the past jobs you described, and all the limitations expressed in hypothetical one, with the following additions. Also, with no concentrated exposure to vibration. Only occasional use of foot controls bilaterally. And no kneeling or crawling.

(Tr. 1001-02).

The VE testified that such an individual could perform the jobs identified in the first hypothetical. (Tr. 1002). Plaintiff's counsel posed a hypothetical question to the VE, assuming all the limitations in the first hypothetical, with the following additional limitations:

> This individual…can only stand and walk for ten to fifteen minutes and needs to change position. And he'd be off task while changing position. And this individual is further limited in sitting ten to fifteen minutes of sitting and he would need to change position. And the total time he'd be off task changing positions from standing and walking to sitting and back and forth, he'd be off task about fifteen percent of the of the work day.

(Tr. 1002).

The VE testified that the individual could not perform the previously identified jobs. (Tr. 1002).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a);

404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

1. The claimant meets the insured status requirements of the Social Security Act (the "Act") through December 31, 2014. This finding adheres to that of the previous decision.

2. The claimant has not engaged in substantial gainful activity since February 5, 2014, the date the claimant became disabled (20 CFR 404.1520(b), 404.1571 *et seq*.). Except that this finding recites the alleged onset date for the present claim, it adheres to that of the previous decision.

3. From February 5, 2014 through August 31, 2016, the period during which the claimant was under a disability, the claimant had the following severe impairments: lumbar degenerative disc disease, status-post decompression and fusion, and major depressive disorder (20 CFR 404.1520(c)). This finding adheres to that of the previous decision.

4. From February 5, 2014 through August 31, 2016, the period during which the claimant was disabled, the severity of the claimant's degenerative disc disease medically equaled the criteria of section(s) 1.04 A of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). This finding departs from that of the previous decision, based on the evidence of a second lumbar surgery and the testimony of the independent medical expert.

5. The claimant was under a disability, as defined by the Social Security Act, from February 5, 2014 through August 31, 2016 (20 CFR 404.1520(d)). This finding departs from that of the previous decision, based on the evidence of a second lumbar surgery and the testimony of the independent medical expert.

6. The claimant has not developed any new impairment or impairments since September 1, 2016, the date the claimant's disability ended. Thus, the claimant's current severe impairments are the same as that present from February 5, 2014 through August 31, 2016. This finding was not reached in the previous decision.

7. Beginning September 1, 2016, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2)). Except that this finding recites the date after the claimant was last disabled, it adheres to that of the previous decision.

8. Medical improvement occurred as of September 1, 2016, the date the claimant's disability ended (20 CFR 404.1594(b)(1)). This finding was not reached in the previous decision.

9. The medical improvement that has occurred is related to the ability to work because the claimant no longer has an impairment or combination of impairments that meets or medically equals the severity of a listing (20 CFR 404.1594(c)(3)(i)). This finding was not reached in the previous decision.

10. After careful consideration of the entire record, the undersigned finds that, beginning September 1, 2016, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant may occasionally operate foot controls with the bilateral lower extremities; the claimant may occasionally stoop, crouch, climb ramps and stairs, but may never kneel, crawl, climb ladders, ropes or scaffolds; the claimant must avoid concentrated exposure to vibration, and all exposure to workplace hazards; the claimant is limited to the performance of simple, routine tasks that do not involve arbitration, negotiation, confrontation, the direction of, or conferral upon the claimant of responsibility for the safety or welfare of, others, undertaken

   in a work setting free of strict production quotas, "piece-rate" work or assembly line work, which setting involves only occasional interaction with others. This finding departs from that of the previous decision, in order to accommodate the current state of the impairments, as documented in the current evidentiary record.

11. The claimant is unable to perform past relevant work (20 CFR 404.1565). This finding adheres to that of the previous decision.

12. Since September 1, 2016, the claimant has been a younger individual age 45-49 (20 CFR 404.1563). This finding departs from that of the previous decision, in order to reflect the claimant's attainment of greater chronological age.

13. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564). This finding adheres to that of the previous decision.

14. Beginning September 1, 2016, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). This finding adheres to that of the previous decision.

15. Beginning September 1, 2016, considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566). This finding adheres to that of the previous decision.

16. The claimant's disability ended September 1, 2016, and the claimant has not become disabled again, prior to the expiration of his insured status (20CFR 404.1594(f)(8)).

(Tr. 960-71).

V.   **Law and Analysis**

   A.   **Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence,

regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

Plaintiff contends that the ALJ erred by determining that his period of disability ended on August 31, 2016. (R. 15, PageID# 1601)[5]. The ALJ concluded that from February 5, 2014 through August 31, 2016, the severity of Plaintiff's degenerative disc disease medically equaled Listing 1.04A. (Tr. 961). However, the ALJ further found medical improvement occurred as of September 1, 2016, ending the claimant's entitlement to disability. (Tr. 964). This finding is largely consistent with the testimony of the ME, Dr. Lorber. (Tr. 995-998).

Nevertheless, Plaintiff contends that Dr. Zeller's consultative opinion, authored on March 23, 2017, refutes any notion of medical improvement and, if ascribed controlling weight, would compel a finding that Plaintiff remained disabled even after September 1, 2016. (R. 15, PageID#

---

[5] Plaintiff cites to transcript page 84 when referencing the ALJ's decision. However, this cite refers to the list of exhibits supporting the February 4, 2014 ALJ decision.

1601). [6] As noted above, Dr. Zellers conducted the examination for the Bureau of Workers' Compensation. (Tr. 938). Dr. Zellers opined that Plaintiff could perform sedentary work but could not sit, stand, or walk on a prolonged basis, would need to change positions as needed, could never climb or balance, could occasionally squat, occasionally engage in repetitive motions with his lower extremities, and could not engage in above ground work in an environment threatening his safety. (Tr. 942-43). Therefore, Plaintiff argues, the ALJ's decision that Plaintiff's disability ended on August 31, 2016, was not supported by substantial evidence.

Plaintiff's argument relies solely on his contention that that the ALJ failed to give Dr. Zellers' opinion *controlling* weight.[7] (R. 15, PageID# 1601). First, Plaintiff does not, and cannot, argue that Dr. Zellers was a treating physician for purposes of the "treating physician" rule. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (A treating physician relationship cannot arise from a single visit); *Staymate v. Comm'r of Soc. Sec.*, 681 Fed. App'x 462, 464 (6th Cir. 2017) (agreeing with the district court that a consulting examiner was not a treating source whose opinion was entitled to controlling weight).

Nonetheless, unless a treating source's opinion was assigned controlling, an ALJ is still required to evaluate all medical opinions regardless of source. *Smith v. Commissioner*, 482 F.3d 873, 875 (6th Cir. 2007) (ALJ must evaluate each medical opinion in the record). The ALJ must then determine how much weight to give to each opinion. *Id.* An ALJ is required to consider the

---

[6] Plaintiff cites to (exhibit B20F pages 1-7, Tr. 992-998) when referencing Dr. Zellers' opinion. B20F is the correct Exhibit number and is located at transcript pages 938-944. Plaintiff cites to Tr. 992-998, however, this cite refers to the end of Plaintiff's testimony and the beginning of the ME's testimony at the July 16, 2019 hearing.

[7] The court limits its review to this sole argument and concludes that Plaintiff has failed to properly assert or support any other argument. *Kennedy v. Commissioner*, 87 Fed. Appx. 464, 2003 WL 23140056, at *1 (6th Cir. 2003) (citing *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)) (rejecting perfunctory argument).

following factors in deciding the weight to ascribe any medical opinion: the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source. 20 C.F.R. §§ 404.1527(c), (e), 927(c), (e); *see generally Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). While the ALJ is directed to consider the factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in the decision. *Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011)

>The ALJ addressed Dr. Zellers' medical source statement as follows:
>
>A consultative examiner for the Bureau of Worker's Compensation, Gordon Zellers, M.D., indicated that the claimant could perform sedentary work, could not engage in sitting, standing, or ambulating on a "prolonged" basis, that he would need to change positions as needed, could never climb, balance, could occasionally squat, occasionally engage in repetitive motions with his lower extremities, and could not engage in above ground work in an environment threatening his safety. Dr. Zellers examined the claimant on a single occasion and is reporting within the bounds of his professional certifications. This opinion is broadly consistent with, and supported by, the overall evidence of record, described in digest form in the analysis of the opinion of Dr. Lorber, above. However, the opinion does not define "prolonged" and this is not a vocational term of art. Dependent on the definition intended, the restrictions may well fit within the standard break and lunch schedule presumed to exist in an eight-hour workday. For the reasons stated in the analysis of the opinion of Dr. Lorber, above, the need to change positions as needed is not substantiated on this record. The opinion also overstates the extent of the postural limitations required, although certainly, some such limitations are appropriate. Overall, this opinion is afforded partial weight.

(Tr. 969).

At the outset, the ALJ recognized that Dr. Zellers was a consultative examiner for the Bureau of Workers' Compensation (Tr. 969), a fact Plaintiff acknowledged. (R. 15, PageID# 1601; R. 18, PageID# 1625). The regulations in effect at the time of the ALJ's decision stated that "[a] decision by … any other governmental agency about whether you are disabled … is based on its

14

rules and is not our decision about whether you are disabled[.] We must make a disability … determination based on social security law. Therefore, a determination made by another agency that you are disabled … is not binding on us." 20 C.F.R. § 404.1504. Social Security Ruling 06-03p, explains that the responsibility for determining disability status rests with the Commissioner, and therefore other governmental agency decisions are not binding. SSR 06-03p, 2006 SSR LEXIS 5. Therefore, Plaintiff's argument that Dr. Zellers' opinion "should be given controlling weight as he is an independent medical examiner[,]" not hired by Plaintiff or the Commissioner—standing alone—is without merit. (R. 15, PageID# 1601).

This is "because other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency." SSR 06-03p, 2006 SSR LEXIS 5. However, the ALJ must still consider the decision, and "should explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases." SSR 06-03p, 2006 SSR LEXIS 5. Such decisions, the Ruling explained, "and the evidence used to make these decisions, may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies based on their rules." *Id*.

Here, the ALJ acknowledged Dr. Zellers' opinion that Plaintiff "could perform sedentary work, could not engage in sitting, standing, or ambulating on a 'prolonged' basis, that he would need to change positions as needed, could never climb, balance, could occasionally squat, occasionally engage in repetitive motions with his lower extremities, and could not engage in above ground work in an environment threatening his safety." (Tr. 969; 942-43). According to Plaintiff's argument, Dr. Zeller's limitations, which allowed Plaintiff to perform "sedentary" work for Workers' Compensation purposes, do not equate to an ability to perform "sedentary" work for

SSA purposes. (R. 15, PageID# 1602). Plaintiff's very argument illustrates why other governmental agency opinions are not binding on the Commission and the need to recognize that other agency definitions might differ. *See*, 20 C.F.R. § 404.1504. Plaintiff implicitly acknowledges that the definition of "sedentary" differs between the agencies, although he fails to acknowledge that Dr. Zellers' defined limitations differ between the agencies.

For example, Plaintiff argues that Dr. Zellers' limitation of "[n]o prolonged sitting, standing or ambulating" renders Plaintiff incapable of performing sedentary work under the SSA definition. (R. 15, PageID# 1602). To this point, the ALJ explained that Dr. Zellers does not define the term "prolonged" in the limitation requiring "[n]o prolonged sitting, standing, or ambulating[.]" (Tr. 969). Such a distinction matters, because for SSA purposes, "[a]lthough a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 CFR 404.1567(a), 416.967(a). Accordingly, the ALJ explained that, depending on the definition of "prolonged", "the restrictions may well fit within the standard break and lunch schedule presumed to exist in an eight-hour workday." (Tr. 969).

Finally, Plaintiff argues that Dr. Zellers' limitation that Plaintiff must be permitted to change body positions on an as needed basis prevents him from performing sedentary work for SSA purposes. (R. 15, PageID# 1602). The ALJ, however, considered this limitation, and explained "[f]or the reasons stated in the analysis of the opinion of Dr. Lorber, above, the need to change positions as needed is not substantiated on this record." (Tr. 969). Earlier in the decision, the ALJ explained "the sit or stand options indicated by Dr. Lorber do not appear necessary. Pain management records typically describe the claimant as presenting in no acute distress, and often,

16

as able to arise from a waiting room seat with no more than mild difficulties (B27F/20, 108, 168)." (Tr. 968). Plaintiff's brief has not challenged the propriety of the ALJ's analysis with respect to any other medical opinion of record, including that of Dr. Lorber.

The ALJ clearly considered the necessary factors before assigning Dr. Zellers' opinion partial weight, specifically those of supportability and consistency. 20 C.F.R. §§ 404.1527(c),(e), 927(c),(e). Further, the ALJ analyzed the whole record, including various medical opinions and testimony, which constitutes substantial evidence capable of supporting the conclusion that Plaintiff's disability ended on August 31, 2016. Plaintiff does not directly challenge any of this evidence or analysis. Therefore, because Plaintiff's argument that the ALJ's decision is not based on substantial evidence is premised entirely on the weight ascribed to the various opinions of Dr. Zellers, it is without merit.

## VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

*s/ David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: September 29, 2021

17